Slip Op. 09-135

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
:
SHINYEI CORPORATION OF AMERICA,          :
:
Plaintiff,          :
:
v.          :          Before: Jane A. Restani, Chief Judge
:
UNITED STATES,          :          Consol. Court No. 00-00130
:
Defendant.          :
_____ :

## OPINION

[Plaintiff's application for fees denied.]

Dated: December 2, 2009

Charles H. Bayar for the plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia
M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice (Michael J. Dierberg and James A. Curley); Edward N. Maurer,
International Trade Litigation, U.S. Customs and Border Protection, of counsel; Deborah R.
King, Office of Chief Counsel for Import Administration, U.S. Department of Commerce (Mark
B. Lehnardt), of counsel, for the defendant.

Restani, Chief Judge: This matter is before the court on the application of plaintiff

Shinyei Corporation of America ("Shinyei") for an award of attorney's fees pursuant to the

Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Shinyei, an importer of ball bearings

from Japan, applies for the legal fees and expenses incurred during the course of its lawsuit

against the United States. The United States contests this application, arguing that its

administrative actions and litigation arguments were reasonable, and, therefore, its position was

substantially justified.  For the reasons stated below, the court denies Shinyei's application for

fees.

## BACKGROUND

The facts of this case have been well documented in previous opinions.  See

Shinyei Corp. of Am. v. United States, 524 F.3d 1274, 1276–81 (Fed. Cir. 2008) ("Shinyei-

CAFC (II)"); Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1299–1304 (Fed. Cir. 2004)

("Shinyei-CAFC (I)"); Shinyei Corp. of Am. v. United States, 491 F. Supp. 2d 1209, 1211–13

(CIT 2007) ("Shinyei (II)"), rev'd Shinyei-CAFC (II) ; Shinyei Corp. of Am. v. United States,

248 F. Supp. 2d 1350, 1351–54 (CIT 2003) ("Shinyei (I)"), rev'd Shinyei-CAFC (I).  The court

presumes familiarity with those decisions, but briefly summarizes the facts relevant to this

application.

Between May 1990 and April 1991, Shinyei imported and entered Japanese ball

bearings, which were subject to antidumping duty deposits of 45.83% ad valorem pursuant to

Commerce's instructions to the United States Bureau of Customs and Border Protection

("Customs").[1]  Shinyei-CAFC (I), 355 F.3d at 1299–1301.  Commerce, however, published final

---

[1] In late 1988, Commerce published its preliminary determination after investigating
these types of antifriction bearings, manufactured by numerous Japanese manufacturers,
including all six of Shinyei's manufacturers: Fujino Iron Works Co., Ltd.; Nakai Bearing Co.,
Ltd.; Nankai Seiko Co., Ltd.; Inoue Jikuuke Kogyo Co.; Showa Pillow Block Mfg., Ltd.; and
Wada Seiko Co., Ltd.  Preliminary Determinations of Sales at Less Than Fair Value: Antifriction
Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan, 53 Fed. Reg.
45,343 (Dep't Commerce Nov. 9, 1988); Shinyei-CAFC (I), 355 F.3d at 1300.  This
determination instructed Customs to suspend liquidations on any subject merchandise and to
collect deposits or bonds at a certain rate for future entries from the aforementioned
manufacturers.  Shinyei-CAFC (I), 355 F.3d at 1300.  In 1989, Commerce changed this deposit
and bond rate in its final determination.  Final Determinations of Sales at Less Than Fair Value:

(continued...)

results of its second antidumping duty administrative review in June 1992, lowering the duty

rates from 45.83% to a range of 1.80% to 16.71% ad valorem.  Antifriction Bearings (Other

Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of

Antidumping Duty Administrative Reviews, 57 Fed. Reg. 28,360, 28,361 (Dep't Commerce June

24, 1992), amended by 57 Fed. Reg. 59,080 (Dep't Commerce Dec. 14, 1992).  Other importers

subsequently challenged these findings, resulting in a preliminary injunction that prevented the

liquidation of all entries made during the second review period, including Shinyei's entries, until

a final determination was made.[2]  See Shinyei-CAFC (II), 524 F.3d at 1278.

   In February 1998, Commerce published its amended results containing new rates

for antifriction bearings and, in orders later that year, instructed Customs to liquidate

merchandise produced by two specific manufacturers.  Antifriction Bearings (Other Than

Tapered Roller Bearings) and Parts Thereof From France, et al.; Amended Final Results of

Antidumping Duty Administrative Reviews, 63 Fed. Reg. 8908 (Dep't Commerce Feb. 23,

1998); see Shinyei-CAFC (I), 355 F.3d at 1301–02.  These instructions, however, failed to

include specifically the bearings that Shinyei imported from these companies.  Id. at 1302.  Thus,

a substantial refund that was owed to Shinyei after the amended results were published, equal to

---

[1](...continued)
Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan, 54
Fed. Reg. 19,101 (Dep't Commerce May 3, 1989).

[2] After publishing its final determination, Commerce instructed Customs to liquidate all
subject Japanese antifriction ball bearings imported during the second review period at the
specified rate.  Shinyei-CAFC (I), 355 F.3d at 1301.

the difference between its initial deposit rate of 45.83% ad valorem and the new "substantially

lower" rate, was not made.  Shinyei-CAFC (II), 524 F.3d at 1278.

Shinyei sued the United States in this Court in March 2000 to correct these

instructions.  Id. at 1278–79.  Nevertheless, in August 2000, Commerce issued a clean up

instruction directing Customs to liquidate all remaining entries of ball bearings from the review

period at the deposit rate.  Id. at 1279.  Shortly thereafter, Customs liquidated Shinyei's

remaining entries at the rate of 45.83%.  Id.  The United States moved to dismiss Shinyei's

complaint in 2002 on the grounds that the court lacked subject-matter jurisdiction because the

action became moot upon Customs' liquidation of the entries.  (See Def.'s Mot. to Dismiss.)

The court granted the motion,  Shinyei (I), 248 F. Supp. 2d at 1361, but the Federal Circuit

reversed and remanded, Shinyei-CAFC (I), 355 F.3d at 1312.  On remand, Shinyei moved for

partial summary judgment, and the United States filed a cross-motion for summary judgment.

(See Pl.'s Mot. for Partial Summ. J.; Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J., & Cross-

Mot. for Summ. J.)  Both motions focused on the effects of deemed liquidation.  (Pl.'s Mot. for

Partial Summ. J.; Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J., & Cross-Mot. for Summ. J.)

The court denied Shinyei's motion and granted the United States' cross-motion.  Shinyei (II),

491 F. Supp. 2d at 1222.  Shinyei appealed this decision, and the Federal Circuit again reversed

and remanded.  Shinyei-CAFC (II), 524 F.3d at 1287.  After the second remand, the parties

entered into a stipulation for entry of judgment, and in June 2009, the court ordered Customs,

pursuant to the stipulation, to pay $2,018,467.39 plus interest to Shinyei, representing the

amount of antidumping duties paid exceeding the correct duties.  (Judgment (June 30, 2009).)  In

July 2009, Shinyei filed this application for fees and expenses.

## DISCUSSION

Under EAJA, a court must award attorney's fees and expenses to a prevailing party in an action against the United States unless the position of the United States was substantially justified or special circumstances make the award unjust.  See 28 U.S.C. § 2412(d)(1)(A).[3]  Fees are not appropriate in this case because, although Shinyei prevailed, the United States' position was substantially justified.

## I.      Shinyei is a prevailing party.

Shinyei is a "prevailing party" under EAJA.  In this case, Shinyei has succeeded on two appeals and received a substantial financial remedy pursuant to judgment from this court.  There is no question, therefore, that Shinyei qualifies as a prevailing party.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (stating that a plaintiff may be considered a "prevailing party" if it succeeds on any significant issue in the litigation that achieves some of the benefit it sought in bringing suit).

---

[3] The statute provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

## II.     The United States' position was substantially justified.

The United States, however, asserts that Shinyei may not recover fees and other expenses under EAJA because the United States was substantially justified in its position. (Def.'s Resp. to Pl.'s Application for Fees & Expenses Pursuant to EAJA ("Def.'s Resp.").) This assertion is correct.[4]

A position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  A court must "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." Chiu v. United States, 948 F.2d 711, 715 (Fed. Cir. 1991).  "The fact that the 'position' is . . . denominated in the singular, although it may encompass both the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions, buttresses the conclusion that only one threshold determination for the entire civil action is to be made." Comm'r, INS v. Jean, 496 U.S. 154, 159 (1990).  Accordingly, the court will consider the agency conduct and the United States' litigation arguments to determine whether United States' overall position was substantially justified.

### A.     The Administrative Prelitigation Conduct

Both parties agree that Commerce's liquidation instruction failed to include a complete list of exporters, importers, or purchasers, an error that contributed to Shinyei's entries

---

[4] Plaintiff did not address this issue in detail in its moving papers, ostensibly because the Government has the burden on this issue.  The relevant legal arguments are well-known to the court.  Plaintiff's attempt to contest immaterial facts and to add legal arguments through a recent submission in the nature of a reply does not aid the court.

not being liquidated at a lower rate.  (Bayar Aff. on Legal Services 34; Def.'s Resp. 22.)

Additionally, Commerce admitted that "it could have included information in the instructions for

[the two manufacturers] related to intermediaries that would have provided . . . Customs . . . with

more information for purposes of liquidating entries made by . . . Shinyei . . . ."  (Def.'s Resp.

22.)  Shinyei argues that these omissions cannot qualify as a position that is substantially

justified and thus reasonable.  (Mem. of Law in Supp. of Pl.'s Application for Fees & Other

Expenses Pursuant to EAJA 30.)  This argument lacks merit.

      Unless bad faith is established, a mere clerical error at the agency level does not

automatically render the United States' position unreasonable.  Cummings v. Sullivan, 950 F.2d

492, 500 (7th Cir. 1991).  Here, the record indicates that the United States attributed its mistake

to inadvertence and neglect.  (See Bayar Aff. on Legal Services 34.)  Thus, this "negligence is

but one part of the agency's conduct" and is a nondeterminative factor.  Sullivan, 950 F.2d at

500.

    **B.**    **The United States' Legal Arguments**

      The Shinyei litigation can be conceptually divided into two phases, Shinyei (I)

and Shinyei (II).  Initially, the court will analyze the reasonableness of the United States'

position during each of these phases separately.

    *1.*  *Shinyei (I)*

      The first phase litigated the issue of whether this Court had subject-matter

jurisdiction over Shinyei's complaint where Customs subsequently liquidated the entries

pursuant to Commerce's clean up instructions.  See Shinyei (I), 248 F. Supp. 2d at 1354–55.

The court granted the United States' motion to dismiss, finding Shinyei's cause of action moot.

Id. at 1358–61.  Before that decision was overturned on appeal, it was generally understood that

"liquidation renders moot any pending court challenge to the underlying agency determinations

regarding those entries, for the statutory scheme does not authorize this court to order a

reliquidation of entries once they are liquidated in accordance with either an outstanding AD or

CVD order . . . ."  Id. at 1359 (citation omitted); see Zenith Radio Corp. v. United States, 710

F.2d 806, 810 (Fed. Cir. 1983); see also Mitsubishi Elecs. Am., Inc. v. United States, 848 F.

Supp. 193, 203 (CIT 1994).  The Federal Circuit, however, held that when a plaintiff challenges

Commerce's instructions because they fail to implement the administrative review results, rather

than challenging the conclusions of those review results, reliquidation is not prohibited because

the action is not one under 19 U.S.C. § 1516a.  Shinyei-CAFC (I), 355 F.3d at 1309.  The

Federal Circuit reversed and remanded, instructing this Court to "reach the merits of Shinyei's

case" because "[n]either section [19 U.S.C. § 1516a] nor Zenith can be read to preclude

reliquidation in actions brought under the [Administrative Procedure Act] seeking corrected

instructions pursuant to [19 U.S.C. §] 1675(a)(2)(C)."  Id. at 1312.

          The United States argues that its position during this phase of the litigation was

reasonable based on precedent, particularly Mitsubishi.  (Def.'s Resp. 13.)  A court may find the

United States' position to be substantially justified when its "arguments both at trial and on

appeal are based on supportable interpretations of . . . case law."  TKB Int'l, Inc. v. United

States, 995 F.2d 1460, 1468 (9th Cir. 1993).  "The mere fact that the United States lost the case

does not show that its position in defending the case was not substantially justified."  Luciano

Pisoni Fabbrica Accessori Instrumenti Musicali v. United States, 837 F.2d 465, 467 (Fed. Cir.

1988) (internal quotation marks and citation omitted).  Here, the United States' position that

Customs' liquidation of Shinyei's entries pursuant to the clean up instruction deprived this Court

of subject-matter jurisdiction certainly was supportable by the case law until the Federal Circuit

clarified the law in <u>Shinyei-CAFC (I)</u>.  <u>See, e.g.</u>, <u>Mitsubishi</u>, 848 F. Supp. at 203.  The United

States' position in the <u>Shinyei (I)</u> litigation, therefore, was substantially justified.

      *2.  Shinyei (II)*

      The Government's conduct in the second phase of the litigation is understood less

easily.  In that phase, both parties cross-moved for summary judgment on the issue of a prior

deemed liquidation.  Essentially, the United States argued that on August 23, 1998, six months

after Commerce's publication of the amended final results, the entries in question were deemed

liquidated under 19 U.S.C. § 1504 at the rate already deposited at entry, and that Shinyei's cause

of action to correct Commerce's instructions, therefore, would be pointless because the rate at

which the entries were liquidated would be the amount deposited upon entry, regardless of

whether there was an error in the instruction process.[5]  <u>Shinyei (II)</u>, 491 F. Supp. 2d at 1216.

Adopting the United States' reasoning, the court granted the United States' motion for summary

judgment because it concluded that existing case law provided that a deemed liquidation is final,

cannot be protested, and cannot be altered by a subsequent liquidation, such as the one that

occurred pursuant to Commerce's clean up instruction.[6]  <u>Id.</u> at 1222.  The Federal Circuit

reversed, holding that this Court must consider Shinyei's claim on the merits because "a deemed

---

     [5]Although plaintiff characterized this as a change in course by the Government, it is not clear that this approach was ever abandoned by the Government as an alternate argument.

     [6] The United States alternatively claimed that even if a plaintiff can protest a deemed liquidation, Shinyei failed to do so in a timely manner in this case.  <u>Id.</u> at 1216–17.

liquidation may properly be protested to obtain reliquidation in accordance with Commerce's final review results," and under the facts at issue Shinyei's protests were timely. Shinyei-CAFC (II), 524 F.3d at 1284–87.[7]

The United States argues that its deemed liquidation defense raised several difficult legal issues that, at the time, were not clearly answered by then existing law. (Def.'s Resp. 17–18.) These issues apparently included whether one can protest the deemed liquidation itself, if so, what deemed liquidation issues are protestable and, whether Shinyei's protests were timely as to all issues. (Id. at 17.) "[C]ourts have held that . . . the government's position was . . . substantially justified when judicial decisions on the issue left the status of the law unsettled, or when the issue was difficult or novel." Nalle v. Comm'r, 55 F.3d 189, 192 (5th Cir. 1995); see also Marcus v. Shalala, 17 F.3d 1033, 1037 (7th Cir. 1994) ( stating that "uncertainty in the law arising from conflicting authority or the novelty of the question weighs in the government's favor when analyzing the reasonableness of the government's litigation position"); Heasley v. Comm'r, 967 F.2d 116, 121 (5th Cir. 1992) (stating that the United States' position can be substantially justified if law is "in flux" and unresolved in circuit).

---

[7] Despite various issues involving failure to post notice of deemed liquidation, the Federal Circuit observed:

> Customs actually liquidated the disputed entries at the same duty rate at which the entries were deemed liquidated–namely, the deposit rate–and thus the actual liquidations accurately reflected the deemed liquidation (albeit serendipitously). Given this unique circumstance, and given that Shinyei filed timely protests of the actual liquidations, we may treat those protests–as a matter of law–as timely protests of the deemed liquidation.

Shinyei-CAFC (II), 524 F.3d at 1286 (emphasis added).

In this case, at the time the United States filed its motion for summary judgment, it was unclear whether one could protest a deemed liquidation and what such a protest could achieve. See Koyo Corp. of U.S.A. v. United States, 403 F. Supp. 2d 1305, 1307 n.3 (CIT 2005) ("Koyo I"), vacated in part by Koyo Corp. of U.S.A. v. United States, 497 F.3d 1231 (Fed. Cir. 2007) ("Koyo II"). Assuming, based on the parties' approaches and, at least for argument's sake, that a deemed liquidation was unprotestable, Koyo I held that a deemed liquidation did not occur because the court could not "accept an interpretation of 19 U.S.C. § 1504(d) which encourages Customs simply to forget or refuse to liquidate . . . ." Id. at 1311. The United States, however, appealed Koyo I. It was not until after the appeal of Shinyei (I) was concluded that the Federal Circuit settled the law regarding protests of deemed liquidations when it affirmed Koyo I in part and vacated it in part, holding that the entries were deemed liquidated, but "an importer . . . had the remedy available under 19 U.S.C. § 1514(a) to protest the deemed liquidation at the duty rates asserted at the time of entry." Koyo II, 497 F.3d at 1237. Thus, there was disagreement about the meaning and relevant effects of § 1504(d) until after Shinyei had filed its second appeal.[8] After Koyo II partially clarified the law, the United States unsuccessfully sought remand of Shinyei (II) to have this court resolve issues it asserted Koyo II left open. Shinyei-CAFC (II), 524 F.3d at 1284 n.3. The United States, therefore, did not attempt to maintain its original arguments once it became clear that these arguments could not be sustained under the

---

[8] At least two CIT judges and apparently the dissenter in Koyo II did not foresee the exact scope of the permissible protest, the multiple time periods for such protests, and the exact extent of lack of finality of deemed liquidation, even after Shinyei-CAFC (I). Koyo II explained the statutory language in terms of precedents that previously seemed to conflict, so that an acceptable course was known. None of this was obvious and some creativity was required to make 19 U.S.C. § 1504(d) workable, as plaintiff's special request for fees essentially recognizes.

Circuit's view.

Additionally, when addressing deemed liquidation in Koyo II, the Federal Circuit provided different reasoning from that of this Court, demonstrating the difficulty associated with this particular issue. See Koyo II, 497 F.3d at 1236. Further highlighting the complexities involved in these cases, the Federal Circuit characterized the circumstances of Shinyei as "unique." Shinyei-CAFC (II), 524 F.3d at 1286; see supra note 7.

Finally, in Shinyei-CAFC (I), the Federal Circuit specifically noted that its holding did not consider the deemed liquidation issue because actual liquidation was conceded, and the trial court had not reached the issue. Shinyei-CAFC (I), 355 F.3d at 1308 n.5. Although it might seem odd in the light of the clarity of Shinyei-CAFC (II), before Koyo II, a reasonable person could have interpreted this reference to include the possibility that the deemed liquidation argument was not entirely foreclosed. Exactly what the "actual liquidation" noted in Shinyei-CAFC (I), 355 F.3d at 1308 n.5, accomplished was not yet clear.

## CONCLUSION

While the Government's litigation position after Shinyei-CAFC (I) presents a closer question than its previous actions and strategy, when the court assesses the Government's behavior as a whole it concludes that it was substantially justified in the context of the unsettled, difficult, and novel legal landscape. Accordingly, Shinyei's application for fees is denied.

                                          /s/Jane A. Restani
                                          Jane A. Restani
                                          Chief Judge

Dated: This 2nd day of December, 2009.
       New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                        Deputy Clerk